John L. Garman, Petitioner *v.* Workmen's Compensation Appeal Board (AMP, Inc. et al.), Respondents.

Submitted on briefs May 11, 1983, to Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Ira H. Weinstock,* with him *Paul J. Dellasega, Ira H. Wienstock, P.C.,* for petitioner.

*Kenneth F. DeMarco, Post & Schell, P.C.,* for respondent, AMP, Inc. et al.

Opinion by Judge Rogers, July 22, 1983:

The claimant in this workmen's compensation case had been receiving benefits under a notice of compensation payable submitted to the workmen's compensation authorities. About four years after the notice of compensation was in effect, the employer filed a petition for termination of benefits accompanied by a doctor's affidavit deposing that the claimant's disability had ceased. Benefits were suspended in accordance with Section 413 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §774.

After hearing evidence, a referee granted the prayer of the petition to terminate benefits. This order was affirmed by the Workmen's Compensation Appeal Board and the claimant has now petitioned this court to review the Board's order. We affirm.

The claimant principally argues that the referee's finding that his disability has finally ceased is not supported by substantial evidence and that, at the worst for him, the record supports an order only for a modification of the notice of compensation payable to one for partial disability.

The claimant was injured in 1973 while lifting a heavy article. He suffered an acute strain in the lumbosacral and cervical area. He returned to work in 1975 on partial disability until 1976 when he returned to full disability. In December, 1977, the claimant's employer sent the claimant to an industrial injury clinic located in Wisconsin where he was thoroughly examined and tested. As a result of this examination and diagnosis, the claimant returned to work for the employer in January, 1978, but within two weeks he quit work claiming that he was physically unable to do his job.

At the referee's hearing, the medical director of the Wisconsin industrial injury clinic, an orthopedic surgeon, testified on behalf of the employer. He expressed his opinion, based upon tests and examinations, that the claimant had no physical problem that would prevent him from returning to work. The employer presented three lay witnesses, neighbors and associates of the claimant, who testified concerning the claimant's attendance at football and basketball games and school board meetings. A private investigator also testified for the employer. He had conducted a surveillance of the claimant, and motion picture films taken by him were admitted into evidence. In these the claimant appears without orthopedic aids, repairing his automobile, an activity which he had previously denied being able to do, and while so engaged squatting, twisting and making other mobile, fluid movements. The claimant admitted that he was the subject of these films.

The claimant testified that he attended sporting events and school board meetings; but he claimed to be unable to bend over at the waist or to stoop without a guarded motion. His treating physician as of March, 1978, gave as his opinion that the claimant was totally disabled. On cross-examination the doctor was presented with a hypothetical question in which he was told to assume that the claimant engaged in activities either admitted by the claimant or testified to by the employer's witnesses or shown in the films, and asked if such activities would be inconsistent with the claimant's condition as the doctor had described it. He answered:

A: Well, I would have to take another look at my feelings about John.

. . . .

I'd have to know who is making these observations and under what conditions to give you an honest answer. But, . . . I'd have to wonder about . . . the insincerity of his history and what he tells me at the time of my evaluations. Sure, I'd have to wonder.

. . . .

Q: Assuming once again that in particular the bending and twisting and stretching, lying in a prone position, [and the] kneeling, all occurred in 1978 after he left work in January of 1978—and once again I am asking you to assume this as true—that this motion was demonstrated in an apparent[ly] fluid fashion without what would commonly be taken as guard[ed] or restrict[ed] activity. Could that have an affect on your opinion?

. . . .

A: It would make me more reflective in regard to both my current thoughts of his diagnosis and what I would advise in the way of treatment. It would have to influence it [my diagnosis] in some degree in that I would think longer and harder about him.

The referee believed the testimony of the employer's witnesses, rejected the claimant's testimony and specifically resolved the conflict in medical testimony in favor of the employer's medical witness. This was the referee's province. Obviously, the finding that the claimant suffers no disability is supported by substantial evidence. This being so, the claimant's other argument, that the notice of compensation payable should be modified to one for partial disability, also necessarily fails.

The claimant finally contends that his compensation should not have been suspended because it was based upon the affidavit of a Wisconsin medical doctor, citing Section 3 of the Statutory Construction Act, 1 Pa. C. S. §1991, which defines the word physician as an individual licensed to practice in Pennsylvania. This contention fails because the heading of Section 3 reads:

> The following words and phrases, when used in any statute . . ., *unless the context clearly indicates otherwise,* shall have the meanings ascribed to them in this section. . . . (Emphasis supplied.)

The Pennsylvania Workmen's Compensation Act contains numerous clear indications that when used in that Act the word physician is not meant to be limited to individuals licensed in Pennsylvania.

One of a number of such indications is the provision of compensation for, and the payment of the medical expenses of, Pennsylvania employees who suffer work-related injuries in other states. Under the rule proposed by the employer, the physicians who treat them on the spot would be excluded from testifying in support of their claims. Of course, in practice these out-of-state doctors are not excluded from testifying and their bills are regularly paid or reimbursed in compensation cases. Section 314 of the Act, 77 P.S. §1414, concerning examination by physicians is instructive. It provides that "the employee [claiming disability] must submit himself for examination, at some reasonable time and place, to a physician or physicians legally authorized to practice under the laws of such place. . . ."

Order affirmed.

612

ORDER

AND Now, this 22nd day of July, 1983, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.